**NELSON, Plaintiff-Appellant, v. NELSON, Incompetent, etc., Defendant-Appellee.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 24550. Decided November 7, 1958.

Taber, Manlove & Duncan, for plaintiff-appellant.
John Milton Costello, for defendant-appellee.

## OPINION

By SKEEL, PJ.

This appeal comes to this court on questions of law from a judgment and decree entered for the defendant on plaintiff's petition and from an order for the defendant on defendant's cross-petition. The action is one in which the plaintiff's husband is seeking a divorce, the cross-petition of the wife is one seeking an order of support.

The petition filed by the husband alleges the marriage of the parties on September 4, 1948, the birth of two children, the last child being three years old when the petition was filed, the children now being in his custody, that his wife was committed to Hawthornden State Hospital as

mentally incompetent on April 2, 1956, and that the defendant has been guilty of gross neglect of duty, which aggressions of her marital duty occurred prior to her incompetency. The prayer is for a decree of divorce and permanent custody of the children.

The defendant's answer puts in issue the alleged claims of gross neglect of duty and prays, by cross-petition, for support. The answer and cross-petition were filed by a guardian duly appointed who was, as shown by the record, substituted for the trustee for suit, appointed by the court upon plaintiff's application. A reply was filed to the defendant's answer and an answer to defendant's cross-petition by which pleading all controverted issues of fact were put in issue. At the conclusion of the presentation of plaintiff's evidence, the defendant moved for judgment, which motion was granted and decree and judgment denying plaintiff a divorce and granting defendant's prayer for support was entered. From that judgment, decree, and support order, this appeal is taken.

The plaintiff-appellant assigns the following errors:

"1. The trial court erred in sustaining the defendant's motion to dismiss the plaintiff's petition and in entering judgment on the defendant's cross-petition after the conclusion of the plaintiff's evidence.

"2. The judgment is contrary to the law and the evidence. The trial court failed to recognize the defendant's plea of insanity as an affirmative defense and to properly place the burden of proof upon the defendant.

"3. The court erred in that certain conclusions of fact are contrary to law and against the manifest weight of evidence."

The record shows that the parties were married (as pleaded) on September 4, 1948. In 1950, the parties purchased the home in which the plaintiff now lives, the down payment of $3,000, used to make the purchase, was made out of the wife's savings. Since the purchase of the home, the plaintiff has paid between two thousand and twenty-five hundred dollars from his income to reduce the balance due on the mortgage. No mention of the property is made in the petition. The record further shows that up and until the birth of the second child, the wife managed the affairs of the household in normal fashion. The husband on being questioned by the court at the conclusion of his testimony testified as follows:

"THE COURT. You made the statement in that report, when you filed this application, did you not, that you observed there was something wrong with your wife from the time the last child was born. Did you make that statement, that you saw some change in your wife after that child was born? That was in 1953.

"THE WITNESS. I may have.

"THE COURT. After Janet was born, did you observe some change in your wife?

"The WITNESS. I noticed she wasn't doing what she should properly do.

"THE COURT. But there was a change in her mannerisms and her conduct around the house; you observed that, did you?

"THE WITNESS. Yes.

"THE COURT. And you made that observation to the doctor in Probate Court, when you filed the request for examination?

"THE WITNESS. Yes, sir."

The application referred to by the court was that filed by the plaintiff in the Probate Court of Cuyahoga County seeking to have his wife probated as incompetent. It is also disclosed by the record that between October, 1953 and the date of her commitment, April 2, 1956, the defendant was subjected to the services of the out-patient department of City Hospital for psychiatric treatment and was at least twice confined in the Cleveland Receiving Hospital for observation.

The claims of gross neglect of duty charged against the defendant by the plaintiff are very well summed up in plaintiff's answer to interrogatories attached to defendant's answer and cross-petition. The questions were:

"1. In what specific occasions was the defendant, Marie B. Nelson 'guilty of gross neglect of duty' before being committed to the State Hospital?

"2. Give the date and location of each item of gross neglect of duty specified in answer to question No. 1."

The plaintiff answered these questions as follows:

"1. The defendant, Marie B. Nelson, is guilty of gross neglect of duty in that she neglected care of the child four and one-half years old who was forced to get herself up, dress herself and feed herself in the mornings.

"She is further guilty of gross neglect of duty in that she failed to get proper meals for the children and the husband, failed to keep the home clean and tidy, failed to do the dishes and the laundry, necessitating the husband to do these things.

"The defendant is further guilty of gross neglect of duty in that she failed and refused to give proper care to the small child about one year old in that she prepared only one meal a day for said small child, refused to bathe said small child or change the bedclothes or diapers of said small child, although requested to do so repeatedly by the plaintiff, failed and refused to cook supper for the family and the children, insisting that the plaintiff take her to dinner every night, failed and refused to bathe herself and, of course, during the period immediately preceding her hospitalization, she remained in bed all day and did absolutely nothing.

"The defendant, Marie B. Nelson, was further guilty of gross neglect of duty in that she grossly neglected the care of her home, the care and responsibility for her children and the care for her husband in all of the acts and duties which the law imposes upon a wife and a mother of small minor children.

"2. The location of all of the items of gross neglect of duty referred to in question No. 1, took place at the family home at 10025 Ackley Road, Parma, Ohio. These acts were continuous repetitions for the past three to four years."

Although it must be remembered in giving consideration to the question of whether or not the conduct of the defendant, admittedly not up to the standard (for at least a part of the period of time set out in plaintiff's petition) that the plaintiff had the right to expect from his wife under normal circumstances, was the result of disease of mind," that there

is no presumption of insanity prior to the date of an adjudication of incompetence," and that insanity, where pleaded as a defense, is affirmative in character and the burden of proof is with the party making such claim, it must also be remembered that the action in which the plaintiff seeks in the trial of the issues to rely on "presumptions of sanity" is a divorce action and subject to equitable considerations favorable toward sustaining the marital status of the parties. The last part of §3105.20 R. C., provides: "In any matter concerning domestic relations, the court shall not be deemed to be deprived of its full equity powers and jurisdiction."

This important amendment to the divorce code (which code provides for an action which has heretofore always been considered and still is controlled procedurally as an action at law), together with the amendment permitting an order for alimony for the continued support of one guilty of aggressions of such a character as to warrant a dissolution of the marital agreement, authorizes the court to act with the powers of a chancellor in preserving the rights and obligations created by a contract of marriage. The hard and fact rules of law are, therefore, not fully applicable where unjust hardship would result. As was said in a case of Lewis v. Lewis, 103 Oh Ap 129, 144 N. E. 2d 887, in the exercise of its full equity powers and jurisdiction, a common pleas court may invoke the "clean hands" doctrine (of equity) and refuse to grant a divorce in an uncontested action where the plaintiff is guilty of misconduct which would constitute grounds for divorce. See also Gage v. Gage, 101 Oh Ap 483, 129 N. E. 2d 486 (affirmed 165 Oh St 462). There can be no question but that entering into the marital relation completely changes the status of the parties. A return to status quo ante is impossible. So it is that a divorce can be sustained only when based on grounds set out in the statute passed to provide relief where one party to the marital relationship has committed aggressions of such an inexcusable character as to warrant the court to act and even then, the offending party cannot be deprived of all rights bestowed by the marital relationship if to do so would shock the countenance of the court.

A court will not exercise its jurisdiction in a case seeking a divorce where the acts of the party charged are due to lack of mental capacity even if such acts, if committed by a person of sound mind, would justify a decree. The extent of the lack of mental capacity is one for the determination of the chancellor or trier of the facts in the exercise of his sound judicial discretion. The rule in criminal cases (where insanity is claimed as a defense), that to be relieved of legal responsibility for criminal acts, the defendant must not have been able to distinguish between right and wrong would have no application where one party to the marital relation becomes mentally ill by reason of which his conduct becomes abnormal. An adjudication of incompetence is not a prerequisite to presenting the question of whether the conduct of a defendant charged with gross neglect of duty in a divorce case was the result of a sick mind. It is also true, as claimed by the plaintiff, that an adjudication of incompetency can have no retrospective force nor can there be a presumption of incompetence retrospectively considered because of

the judgment finding the defendant incompetent. The rights of the parties, including the state of mind of the defendant, when that question is presented, must be determined from the evidence presented in trying the issues of fact in the case.

Here the plaintiff presented evidence which, when considered in the light of the surrounding circumstances and from the facts not in dispute, would justify the conclusion reached by the trial judge that the conduct of the defendant in neglecting her household duties was due to mental illness and not from purposeful or wilful disregard of family obligations.

For the foregoing reasons, the judgment is affirmed.

HURD and KOVACHY, JJ, concur.